# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re:<br><br>**RHODIUM ENCORE LLC.,** *et al.*,<br>Debtors. | **Bankruptcy Court for the Southern District of Texas**<br>**Chapter 11**<br>**Case No. 24-90448-(ARP)**<br><br>**(Jointly Administered)** |
| **345 PARTNERS SPV2 LLC, GRANT FAIRBAIRN, AS TRUSTEE AND ON BEHALF OF GRANT FAIRBAIRN REVOCABLE TRUST, NINA FAIRBAIRN, AS TRUSTEE AND ON BEHALF OF NINA CLAIRE FAIRBAIRN REVOCABLE TRUST, RICHARD FULLERTON, WILLIAM HO, AS TRUSTEE AND ON BEHALF OF GR FAIRBAIRN FAMILY TRUST, NCF EAGLE TRUST, GRF TIGER TRUST, AND NC FAIRBAIRN FAMILY TRUST, SCOTT KINTZ, AS TRUSTEE AND ON BEHALF OF KINTZ FAMILY TRUST, JACOB RUBIN, TRANSCEND PARTNERS LEGEND FUND LLC, VALLEY HIGH LP, JERALD WEINTRAUB, AS TRUSTEE AND ON BEHALF OF JERALD AND MELODY HOWE WEINTRAUB REVOCABLE LIVING TRUST DTD 02/05/98, AS AMENDED, AND MIKE WILKINS, AS TRUSTEE AND ON BEHALF OF WILKINS-DUIGNAN 2009 REVOCABLE TRUST**<br>Plaintiffs,<br><br>vs.<br><br>**NATHAN NICHOLS, CHASE BLACKMON, CAMERON BLACKMON, NICHOLAS CERASUOLO, AND IMPERIUM INVESTMENTS HOLDINGS, LLC,**<br>Defendants, | **Adv. Pro. No. 25-04008** |

2

| | |
|---|---|
| **SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF RHODIUM ENTERPRISES, INC.**<br><br>**Intervenor-Defendant.** | |

### INTERVENOR-DEFENDANT SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF RHODIUM ENTERPRISES, INC.'S [PROPOSED] BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE AND IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

### INTRODUCTION

The Plaintiffs in this matter allege that they are investors in Rhodium Enterprises, Inc. and its corporate affiliates. The Defendants (as defined below) are current directors, officers, and shareholders in those entities. Rhodium Enterprises, Inc. ("Rhodium Enterprises") and certain of its corporate affiliates (as defined below, the "Debtors"), including those entities in which Plaintiffs allege they have invested, are currently parties to bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of Texas. Those proceedings are being jointly administered under the caption *In re Rhodium Encore LLC, et al.*, Case No. 24-90448 (ARP) (Bankr. S.D. Tex.), filed August 24, 2024 and August 29, 2024 (the "Bankruptcy Case").[1]

A Suggestion of Bankruptcy was filed in this matter when it was pending in Tarrant County, Texas on December 13, 2024, available in this action at ECF No. 1-5. In that filing, the Debtors notified the Court that "Debtors' property includes causes of action that allege

---

[1] The "Debtors" include: Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC , Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Renewables LLC, Air HPC LLC, Rhodium Shared Services LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC.

3

harm to the Debtors and their investors" and that any action to continue this proceeding would violate the automatic stay in the Bankruptcy Case.

Intervenor-Defendant the Special Committee of the Board of Directors of Rhodium Enterprises (the "Special Committee") submits this brief in opposition to the Motion to Remand this action filed by Plaintiffs and in support of Defendants Nathan Nichols, Chase Blackmon, Cameron Blackmon, and Imperium Investments Holdings, LLC's (collectively, "Individual Defendants," and together with Defendant Nicholas Cerasuolo, the "Defendants") Motion to Transfer Venue. In support, the Special Committee states as follows.

## FACTS

On August 28, 2024, the Board of Directors of Debtor Rhodium Enterprises (the "Enterprises Board") determined that, in connection with the Debtors' Chapter 11 filings, it was advisable and in the best interests of the Debtors and their stakeholders to establish a special committee of the Enterprises Board. (Schmeltz Decl. at ¶ 2.)[2] The Enterprises Board did so and authorized the Special Committee to take any action with respect to any Conflict Matter. (*Id.* at ¶ 3.)

A "Conflict Matter" is defined in the resolution creating the Special Committee as a matter in which a conflict of interest exists or is reasonably likely to exist between Rhodium Enterprises and any of its direct or indirect equity holders, affiliates, subsidiaries, directors, officers, or other stakeholders, or any affiliate or other related party of the foregoing (each a "Related Party" and, collectively, the "Related Parties"). (*Id.*) The

---

[2] Citations to the "Schmeltz Decl." refer to the Declaration of Trace Schmeltz supporting the Special Committee's Motion to Intervene.

4

actions that may be taken by the Special Committee, as determined in the sole judgment of the Special Committee, include, but are not limited to: (a) any release or settlement of potential claims or causes of action of Rhodium Enterprises or its subsidiaries, if any, against the Related Parties; and (b) investigating any past or current transaction that may involve a Conflict Matter. (*Id.*)

The Special Committee has acted since its appointment to investigate the Conflict Matters. Specifically, the Special Committee retained Barnes & Thornburg LLP ("Barnes") as its counsel shortly after its appointment. (*Id.* at ¶ 4.) Since then, Barnes has conducted an extensive investigation under the Special Committee's supervision covering fifteen (15) categories of allegations, which include potential claims of breaches of fiduciary duties relating to the allegations in this action. (*Id.* at ¶ 5.) Barnes has substantially completed its investigation and continues to assist and advise the Special Committee within its authorized scope, including with respect to inquiries from stakeholders in the Debtors' Chapter 11 cases concerning Conflict Matters, the potential resolution of Conflict Matters, and the impact of any such resolutions on the Debtors' plan of reorganization. (*Id.* at ¶ 6.)

The Conflict Matters investigated by the Special Committee include numerous potential claims and causes of action against the Defendants. (*See id.* at ¶ 5.) Those claims fall within the Special Committee's area of responsibility because (i) the Defendants are unquestionably Related Parties and (ii) of the nature of the pre-bankruptcy transactions involved. As a result, the Special Committee has the authority and responsibility to investigate, assert, and—if necessary—resolve those Conflict Matters for the benefit of Rhodium Enterprises and its stakeholders.

# ARGUMENT

### A. Plaintiffs' Claims Arise Out of the Same Facts and Circumstances as Conflict Matters Investigated by the Special Committee

The facts and circumstances described in Plaintiffs' Petition are clearly bases for Conflict Matters, in that they involve Related Parties and past transactions involving the Debtors and those Related Parties. Case law establishes that the claims asserted by Plaintiffs in this matter are derivative claims belonging to the Debtors' bankruptcy estates.

Under Delaware law, the analysis for determining if a claim is derivative involves two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).[3] Though Plaintiffs have styled their claims here as direct, the Court is not bound by that characterization. *See, e.g.*, *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 900-901 (5th Cir. 2019) ("[Plaintiffs' pleading of direct claims] is word play … Plaintiffs-Objectors' suits are derivative of and dependent on the receiver's claims and compete with the receiver for the dollars in Willis's and BMB's pockets."); *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 702 (Bankr. S.D. Tex. 2007) (concluding Plaintiffs' claims were "merely a clever restatement of a claim for breach of fiduciary duty").[4] Indeed, Plaintiffs allege that the Defendants—fiduciaries and

---

[3] Delaware law is relevant to the derivative claim analysis, because it is the state of incorporation of Rhodium Enterprises.

[4] Even though they are incorrectly restyled as direct claims, Plaintiffs also fail to establish standing to bring derivative claims. *See In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ-11, 2025 WL 854623, at **12-13, n.55 (Bankr. N.D. Tex. March 18, 2025) (granting judgment on the pleadings for failure to state a claim by failing to meet derivative standing requirements despite pleading direct claims) (citing *7547 Corp. v. Parker & Parsley Dev. Partners*, 38 F.3d 211, 221 (5th Cir. 1994) (unitholders and limited partners may not sue directly under Texas law for wrongs suffered by the partnership); *In re Chiron Equities, LLC*, 552 B.R. 674, 687 (Bankr. S.D. Tex. 2016) (under Texas law, the court looks to the nature of the wrongs alleged, and if it is of indirect harm to the equity holder, through a diminution of the value of its interest by virtue of harm inflicted on the entity, the claim is derivative). The court in *Highland*

Related Parties of the Debtors—harmed Rhodium Enterprises based on actions that were purportedly contrary to the best interests of the Debtors. For example:

- Petition at ¶ 47: "The Rollup Transaction should have resulted in Rhodium Enterprises owning approximately 44.4% of the economics of the Operating Companies, but Defendants' self-dealing **caused Rhodium Enterprises to own only around 37.9%**." (emphasis added);

- Petition at ¶ 49: "Defendants directed the movement of cash and assets (that could have been used to pay debt) ***from Rhodium-related entities***…" (emphasis added);

- Petition at ¶ 52: "Defendants mismanaged and defrauded **Rhodium** in numerous other ways" including "embezzl[ing]", "usurping" "corporate opportunities" belonged to Rhodium, and "pocketing" profits that "should have gone to **Encore**."

Significantly, the harms alleged by Plaintiffs are not particularized to Plaintiffs, but instead fall on all stakeholders in Rhodium Enterprises. The alleged failure to disclose in Plaintiffs' Riot Transaction claim (Petition at ¶¶ 54-57) would have harmed all similarly situated stakeholders, as would the alleged misrepresentations in their Roll-Up Transaction claim (*Id.* at ¶¶ 58-61).

The fact that Plaintiffs' claims are based solely on actions that allegedly harmed Rhodium Enterprises (and its operations) makes them Conflict Matters within the purview of the Special Committee to investigate and resolve, capable of resolution only in the Bankruptcy Case. *See Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988). Indeed, most of the Plaintiffs have already filed proofs of claim in the Bankruptcy Case based on the facts and circumstances set forth in their Petition, effectively

---

*Capital Management* explained, "just because [plaintiff] alleges that it is asserting a direct, and not derivative, claim under Texas law, does not make it so: 'a claim is not 'direct' simply because it is pleaded that way.'" *In re Highland Cap., Mgmt. L.P.*, 2025 WL 854623, at **12-13.

7

conceding that those claims will need to be addressed in the Bankruptcy Case. [*See* ECF No. 13, Defs. Objection to Pls. Mot. to Remand at 9.]

The Special Committee, which as a subset of the Enterprises Board and therefore has a duty to all stakeholders of Rhodium Enterprises, has conducted an extensive investigation of numerous breach of fiduciary duty claims involving the Defendants and arising out of the same factual circumstances set out in Plaintiffs' Petition. (Schmeltz Decl. at ¶¶ 3-6.) Regardless of how they are specifically asserted, Plaintiffs' ultimately claim they put millions of dollars of value into the Debtors' estates, that the Defendants misused those funds while managing the Debtors, and now the estates cannot repay that value. These are creditor claims for recovery. The Special Committee is already ready pursuing these claims as appropriate for the benefit of all stakeholders. (*Id.* at ¶ 7.) Therefore, Plaintiffs' claims must be transferred to the Bankruptcy Court to be addressed in connection with the Bankruptcy Case.

### B. Plaintiffs' Claims are "Related To" the Bankruptcy Case and the Bankruptcy Court is Best Positioned to Evaluate Them.

Plaintiffs' claims also unquestionably fall within the Bankruptcy Court's jurisdiction as claims "related to" the Bankruptcy Case. The Bankruptcy Court's jurisdiction over matters "related to" a bankruptcy case under 28 U.S.C. § 1334(b) is broad. The test for "related to" jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in a bankruptcy action. *See, e.g., In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007). Claims "relate to" a bankruptcy proceeding if the outcome could alter the debtor's rights, liabilities, options, freedom of action, or could influence the administration of the bankrupt estate. *Id.*

8

Adjudication of Plaintiffs' claims against the Defendants in this case has an obvious effect on the Debtors' estates. As explained above, Plaintiffs have asserted multiple claims in the Bankruptcy Case on the same facts and theories as here. (*See* Schmeltz Decl. ¶¶ 8-9.) Those claims are unliquidated but asserted to be not less than tens of millions of dollars. In addition to the potential treatment of those claims, Plaintiffs are no doubt hoping that the outcome of this action will have a favorable preclusive effect on their claims in the Bankruptcy Case. If that hope were realized, the outcome of this action could have a substantial effect on the allowability and amount of a significant portion of the claims asserted in the Bankruptcy Case, which may in turn affect the distributions to other creditors and interest holders.

Therefore, even the very question of whether these claims are individual, derivative, within the Special Committee's purview, or otherwise, should be resolved in the Bankruptcy Case given that the allegations obviously "relate to" the outcome of the Bankruptcy Case.[5]

### C. Judicial Economy and Fairness are Best Served by Transferring Plaintiffs' Claims

As the Individual Defendants have argued, the Bankruptcy Case is the most appropriate, fair, and efficient means of addressing Plaintiffs' claims. As noted above, most

---

[5] In fact, bankruptcy courts have the authority to stay direct claims that "relate to" the bankruptcy proceeding's subject matter and outcome, to ensure the claims are addressed in the order in which they belong. *See Fisher v. Apostolou*, 155 F.3d 876, 881–82 (7th Cir. 1998) (entering stay of proceedings where the plaintiffs' claims were "to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy"); *In re Mem'l Ests., Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991) (explaining jurisdiction for stay includes claims affecting "the allocation of property among creditors"); *In re Juneau's Builders Ctr., Inc.*, 57 B.R. 254, 258 (Bankr. M.D. La. 1986) ("To get an injunction against a creditor prohibiting an action against a third party, therefore, the debtor must show that the creditor is not pursuing his legitimate right to collect from the third party, but rather is using the action against the third party primarily to pressure the debtor."). Plaintiffs must then "await the bankruptcy court's disposition of the common claim since the shareholder cannot measure its injury until then." *Cf. Bankers Tr. Co. v. Rhoades,* 859 F.2d 1096, 1106 (2d Cir. 1988), *cert. denied,* 490 U.S. 1007, (1989); *In re Granite Partners, L.P.*, 194 B.R. 318, 325 (Bankr. S.D. N.Y. 1996), *corrected* (Apr. 16, 1996).

of the Plaintiffs filed proofs of claim in the Bankruptcy Case, which cover subject matter substantially similar to their claims in the present action. Plaintiffs no doubt named only the directors, officers, and Imperium—and not the Debtors—in a transparent attempt to get around the automatic stay imposed in the Bankruptcy Case.

Once a party files a proof of claim in bankruptcy, however, that party has consented to the bankruptcy court's jurisdiction to adjudicate the matter. *See, e.g., Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("by filing a claim against a bankruptcy estate, the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power"); *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1054 (5th Cir. 1986) ("by filing a proof of claim in the bankruptcy proceeding, [creditor] impliedly consented to the jurisdiction of the bankruptcy court, at least as to a determination of the validity and amount of the claim asserted"); *In re Raygoza*, 556 B.R. 813, 823 (Bankr. S.D. Tex. 2016) (same).

Even if this Court disagrees that the proofs of claim constitute consent to the Bankruptcy Case's jurisdiction, they nevertheless support the judicial economy of consolidating the claims in the Bankruptcy Case. The proofs of claim show—in Plaintiffs' own words—that their claims against the Debtors in the Bankruptcy Case and their claims against the Individual Defendants here are essentially the same. Allowing duplicative litigation to proceed in different courts creates the risk of inconsistent judgments, prolongs litigation, wastes the estate on duplicative legal expenses and competes for the funds available for recovery. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 900-01 (5th Cir. 2019).

**CONCLUSION**

WHEREFORE, for the reasons stated above, Intervenor-Defendant Special Committee respectfully requests this Court grant the Individual Defendants' Motion to Transfer and Deny Plaintiffs' Motion to Remand, and for such other relief as this Court deems just.

Dated: April 7, 2025							Respectfully submitted,

                                */s/ Thomas Haskins*
Thomas Haskins
**BARNES & THORNBURG LLP**
2121 N. Pearl Street Suite 700
Dallas, TX 75201
Telephone: 214-258-4111
Fax: 214-258-4199
thaskins@btlaw.com

and

Vincent P. (Trace) Schmeltz III
*(pro hac vice pending)*
**BARNES & THORNBURG LLP**
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-5602
Fax: 312-759-5646
tschmeltz@btlaw.com

*Counsel for Proposed Intervenor-Defendant Special Committee of the Board of Directors of Rhodium Enterprises, Inc.*